IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                          Case No. 12-34352-EEB
                                                Chapter 13
James N. Burrus

Debtor(s).

US Bank Trust National Association as Trustee of Cabana Series III Trust

Movant.

vs.

James N. Burrus and Adam M. Goodman, Chapter 13 Trustee

Respondents.

**NOTICE OF MOTION FOR RELIEF FROM STAY
AND OPPORTUNITY FOR HEARING**

**OBJECTION DEADLINE: SEPTEMBER 17, 2020**

NOTICE IS HEREBY GIVEN that a Motion for Relief from Stay has been filed with the Court, a copy of which is attached hereto.

A HEARING ON THE MOTION has been set for September 24, 2020 at 1:30 p.m. in Courtroom F of the U.S. Bankruptcy Court for the District of Colorado located in the U.S. Customs House at 721 19th Street, Denver, CO 80202. The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

PRIOR TO THE HEARING, parties are instructed to check with the Court and the Court's docket to verify if the preliminary hearing will be held in person (in the courtroom) or by telephone due to the COVID-19 Pandemic. If the preliminary hearing will be conducted by telephone, parties scheduled to appear by telephone are responsible to call the Court to participate in the hearing five (5) minutes prior to the start of the hearing. Parties scheduled to appear shall call the Court at 1-888-684-8852, Meeting Access Code: 3454024#. Parties shall file their witness and exhibit lists 24 hours prior to the scheduled hearing.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court (in the bankruptcy clerk's office located at 721 19th St., Denver, CO 80202) a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

IF YOU FILE AN OBJECTION, you are REQUIRED to comply with Local Bankruptcy Rule 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested will be granted without further notice to you.

Dated: August 28, 2020

Respectfully Submitted,
Halliday, Watkins & Mann, P.C.

*/s/ Heather L. Deere*
Heather L. Deere, #28597
355 Union Boulevard, Suite 250
Lakewood, CO 80228
(303) 274-0155
(303) 274-0159 (fax)
bankruptcyco@hwmlawfirm.com
File No. CO10608

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    Case No. 12-34352-EEB
                                          Chapter 13

James N. Burrus

Debtor(s).

US Bank Trust National Association as Trustee of Cabana Series III Trust

Movant.

vs.

James N. Burrus and Adam M. Goodman, Chapter 13 Trustee

Respondents.

## MOTION FOR RELIEF FROM STAY

COMES NOW US Bank Trust National Association as Trustee of Cabana Series III Trust, ("Movant"), by and through its attorney, Heather L. Deere, and hereby requests that the Court terminate/annul the automatic stay of 11 U.S.C. §362(a) as to the real property named in this motion, and as grounds therefore respectfully represents.

1.      That the petition initiating this case was filed on November 30, 2012.  Movant is a secured creditor for which Movant claims a valid lien or security interest in the following described real property (the "Property"):

See the Deed of Trust Incorporated herein by reference

Purported common address: 9108 North 119th Street, Longmont, CO 80501

2.      As set forth in the unsworn declaration attached to this Motion and incorporated herein by reference pursuant to Local Bankruptcy Rule 4002-3(c), the Debtor is not in military service.

3.      James N. Burrus and Therese L. Burrus have executed and delivered or are otherwise obligated with respect to that certain promissory note in the original principal amount of $359,650.00 (the "Note").  A copy of the Note is attached hereto and incorporated herein by reference.  Movant is the entity entitled to enforce the Note.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") under and with respect to the Note and the Deed of Trust are secured by the Property. A copy of the Deed of Trust is attached hereto and incorporated herein by reference. The Note and Deed of Trust have been modified pursuant to a Loan Modification Agreement dated November 14, 2018.

5.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of Deed of Trust, a copy of which is attached hereto and incorporated herein by reference.

6.      BSI Financial Services services the loan on the Property referenced in this Motion. In the event the automatic stay in the case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent or custodian, has possession of the original Note. The Note is either made payable to Movant or has been duly endorsed.

7.      The amount due Movant pursuant to the terms of the Note and Deed of Trust as of August 13, 2020 is $328,617.58.

8.      The Note and Deed of Trust require the Debtor to make monthly installment payments. The following chart sets forth a summary of the number and amount of payments owed by the Debtor pursuant to the terms of the Note as of August 13, 2020:

| Number of Missed Payments | From | To | Monthly Payment Account | Total Missed Payments |
|---|---|---|---|---|
| 5 | 03/01/2020 | 07/01/2020 | $1,880.45 | $9,402.25 |
| 1 | 08/01/2020 | 08/01/2020 | $1,946.67 | $1,946.67 |
| Attorney's Fees | | | | $1,050.00 |
| Filing Fees | | | | $181.00 |
| Less post-petition partial payments: | | | | ($389.86) |

Total: $12,190.06

9.      As required by Local Bankruptcy Rule 4001-1(a)(4)(B), a payment history from the effective date of the Loan Modification Agreement referenced in Paragraph 4 as evidence of the default in payments and a summary as to the default in payments are attached hereto and incorporated herein by reference.

10.      This case was filed on November 20, 2012. The Debtor's Chapter 13 Plan was a 60-month plan with payments to start in December 2012 with the final payment under the Chapter 13 Plan due in November 2017. The Chapter 13 Plan has long been completed. The Chapter 13 Trustee filed a Notice of Final Cure on November 13, 2017. However, 33 months

after the end of the Chapter 13 Plan, this case remains open.  Further, the Debtor has not either received his discharge or been denied a discharge.  A ruling on a motion to dismiss filed by the Chapter 13 Trustee has been pending since March 13, 2019.

11.     Since the automatic stay under 11 U.S.C. §362(a) continues until the case is closed, dismissed or the discharge is granted or denied pursuant to 11 U.S.C. §362(c), the automatic stay has been in effect for almost 8 years and the Debtor has had the benefit of the automatic stay for far longer than the provisions of the bankruptcy code contemplate for a chapter 13 debtor.

12.     The Debtor is in default in the performance of the terms and conditions of said Note and Deed of Trust and, therefore, the amounts stated in this motion are now due and owing to Movant and Movant is lawfully entitled to exercise its state law rights and remedies as to the above-described property.

13.     That enforcement of this security interest has been stayed automatically by operation of 11 U.S.C. §362 (a); however, Movant is entitled to relief from such stay for the reasons stated in this Motion.

14.     The fair market value of the Property described in Paragraph 1 is approximately $572,100.00 pursuant to the Boulder County Assessor's office.

15.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are: (i) Movant ($328,617.58); (ii) Citi Mortgage, Inc. ($61,911.87).

16.     Movant is entitled to relief from stay under 11 U.S.C. §362(d)(1) for the following reasons:

    a.     The Debtor has failed to make monthly payments when due and/or have failed to make the correct payment amount due causing the loan to be in default. The loan is due for the March 1, 2020 payment and all subsequent payments (see paragraph 8 above for amount and default breakdown), and this default continue to the present time; and

    b.     The Debtor has failed to make payments to Movant as required by the terms the Promissory Note and Deed of Trust, thus the Debtor has failed to fulfill the payment obligations on a secured claim. Said default constitutes a material default of the terms of the Note and Deed of Trust, and Movant lacks adequate protection of its claim having no recourse to enforce the terms of the Promissory Note and Deed of Trust due to the default.  Movant is also harmed by the exceedingly excessive amount of time the automatic stay has been in effect in this case.

17.     That Movant has incurred its reasonable attorney's fees of $1,050.00 and costs of $181.00 for its Motion for Relief from Stay pursuant to the terms of the Promissory Note and Deed of Trust.  Movant may add the fees and costs to the loan pursuant to the contractual provisions of the Promissory Note and Deed of Trust.  This information is being given to disclose post-petition fees and costs to the Debtor and advise that the fees and costs may be included in any post-petition reinstatement or stipulation to resolve the motion.

18.     In the event no response is filed to this motion, the Movant requests that the court waive the fourteen (14) day stay period pursuant to Rule 4001(a)(3) of the Federal Rule of Bankruptcy Procedure, so that Movant may immediately implement any order granted.

WHEREFORE, Movant, US Bank Trust National Association as Trustee of Cabana Series III Trust, requests the Court to enter an Order granting Movant, and any loan servicer, relief from stay as to the subject property located at 9108 North 119th Street, Longmont, CO 80501 by annulling and/or terminating the automatic stay pursuant to 11 U.S.C. §362(d) to allow Movant to pursue state law rights and remedies as to the subject property only including but not limited to foreclosure, loss mitigation, short sale or deed in lieu of foreclosure, that this order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter, and for such other and further relief as this Court may deem just and proper.

Dated: August 28, 2020

Respectfully Submitted,

Halliday, Watkins & Mann, P.C.

*/s/ Heather L. Deere*
Heather L. Deere, #28597
Attorney for Movant
355 Union Blvd, Ste. 250
Lakewood, CO 80228
(303) 274-0155
(303) 274-0159 (fax)
bankruptcyco@hwmlawfirm.com
File No. CO10608

## <u>UNSWORN DECLARATION OF MILITARY SERVICE UNDER PENALTY OF PURJURY</u>

I, Heather L Deere, attorney at Halliday, Watkins & Mann, P.C. and being over the age of 18, hereby declares in accordance with the Servicemembers Civil Relief Act ("SCRA") as follows:

In support of this Declaration, a search of the Department of Defense Manpower Data Center for the military status of James N. Burrus, the Debtor in Case No. 12-34352-EEB on August 28, 2020. The search indicated that there was no information, as to all branches of the military, that the Debtor are persons currently on active duty.

I have personally reviewed the searches detailed above and I declare based on my personal knowledge and under penalty of perjury the facts contained in the declaration are true and corrected.

Dated: August 28, 2020

Halliday, Watkins & Mann, P.C.

*/s/ Heather L. Deere*
Heather L. Deere, #28597
Attorney for Movant
355 Union Blvd, Ste. 250
Lakewood, CO 80228
(303) 274-0155
(303) 274-0159 (fax)
bankruptcyco@hwmlawfirm.com
File No. CO10608

Department of Defense Manpower Data Center

Results as of : Aug-28-2020 04:37:58 PM

SCRA 5.6



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX-5074
Birth Date:
Last Name:        BURRUS
First Name:       JAMES
Middle Name:      N
Status As Of:     Aug-28-2020
Certificate ID:   M0ZD3QWY6BGKFYM

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

*Loan Number:* 

MIN:

# NOTE

CERTIFIED TO BE A TRUE COPY
OF THE ORIGINAL DOCUMENT
DOCSPLUS INC.

June 30, 2005

BOULDER, COLORADO
9108 NORTH 119TH STREET
LONGMONT, COLORADO 80501
(Property Address)

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S.   $359,650.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Liberty Home Loans, Inc. .
   I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625%.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the 1st day of each month beginning on August 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at

LIBERTY HOME LOANS
2687 NORTH PARK DRIVE, SUITE 103
LAFAYETTE, COLORADO 80026
                                         or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $2,070.35.

**4. BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   **(B) Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C) Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   **(D) No Waiver By Note Holder**
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

---

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
                                                           Page 1 of 2
DS, Inc. - (800) 554-1872                                                         Borrower(s) Initials

*Loan Number:* ▆▆▆▆▆▆                                                          MIN: ▆▆▆▆▆▆▆▆

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JAMES N. BURRUS          -Borrower          TERESE L. BURRUS          -Borrower
Social Security Number: ▆▆▆▆▆▆             Social Security Number: ▆▆▆▆▆▆

                                                              *(Sign Original Only)*



# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

*This* _____ *day of* _____

*Note Date:*            June 30, 2005

*Original Loan Amount:*  $359,650.00

*Borrower(s) Name(s):*   JAMES N. BURRUS
                         TERESE L. BURRUS

*Property Address:*      9108 NORTH 119TH STREET
                         LONGMONT, COLORADO 80501

Pay to the order of

Without Recourse

This __35th__ day of __June__ , __2005__

Liberty Home Loans, Inc.

*Diane Burdolski*
_____
Signature of Duly Authorized Officer

DIANE BURDOLSKI - ASST. SECRETARY
Typed Name and Title of Signatory

**2703319**
Page  1 of 10
07/11/2005 03 03P
Boulder County Clerk, CO DT        R 51.00        D 0.00

WHEN-RECORDED, MAIL TO:
Liberty Home Loans, Inc.
8500 W. Bowles Avenue: Suite 300
Littleton, COLORADO 80123

This Instrument was prepared by:
Liberty Home Loans, Inc.
8500 W. Bowles Avenue: Suite 300
Littleton, COLORADO 80123
303-971-0780

Loan Number: ▮▮▮▮▮

Order Number: _____        (Space Above This Line For Recording Data) _____

# DEED OF TRUST

MIN: ▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2005 together with all Riders to this document.

(B) "Borrower" is JAMES N. BURRUS and TERESE L. BURRUS        . Borrower is the trustor under this Security Instrument.

(C) "Lender" is Liberty Home Loans, Inc. , organized and existing under the laws of Colorado.
Lender's address is 8500 W. Bowles Avenue: Suite 300. Littleton, COLORADO 80123.

(D) "Trustee" is the Public Trustee of BOULDER County, Colorado.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated June 30, 2005. The Note states that Borrower owes Lender THREE HUNDRED FIFTY-NINE THOUSAND SIX HUNDRED FIFTY and no/100 Dollars (U.S. $359,650.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2035.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Other (Specify) -
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] VA Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or

---

2703319
Page: 2 of 10
07/11/2005 03.03P
Boulder County Clerk, CO DT          R 51.00    D 0 0

authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of BOULDER:

  SEE EXHIBIT A

Parcel Identification Number:

which currently has the address of   9108 NORTH 119TH STREET
                                     LONGMONT, COLORADO 80501                                         ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of

**2703319**
Page: 3 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT      R 51 00      D 0 00

its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**2703319**
Page: 4 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT      R 51.00      D 0.00

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower

**2703319**
Page: 5 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT        R 51.00        D 0.00

shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

---

COLORADO-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT with MERS**                         Form 3006  1/01
Page 5 of 9

IDS, Inc - (800) 554-1872                                                                   Borrower(s) Initials

2703319
Page: 6 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT      R 51 00     D 0.00

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property

2703319
Page  7 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT          R 51.00          D 0.00

under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;

---

**2703319**
Page: 8 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT          R 51.00      D 0.00

(b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.**

---

COLORADO--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT with MERS**
Page 8 of 9

IDS, Inc - (800) 554-1872

Form 3006 1/01

Borrower(s) Initials

**2703319**
Page: 9 of 10
07/11/2005 03:03P
Boulder County Clerk, CO DT      R 51.00      D 0.00

Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JAMES N. BURRUS                -Borrower

_____          _____ (Seal)
                                          TERESE L. BURRUS               -Borrower


STATE OF COLORADO,                County ss: Boulder

The foregoing instrument was acknowledged before me this 30th day of June , 2005 by JAMES N. BURRUS, and TERESE L. BURRUS.
Witness my hand and official seal.
My Commission Expires: 10/1/2007

(Seal)

_____
Notary Public

My Comm. Expires 10-01-2007

---

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3006 1/01
                                        Page 9 of 9

IDS, Inc - (800) 554-1872

**2703319**
Page: 10 of 10
07/11/2005 03.03P
Boulder County Clerk, CO DT          R 51.00          D 0.00

## ATTACHED LEGAL DESCRIPTION

A tract of land situated in the North half of the South half of the Northwest Quarter of Section 13, Township 2, North, Range 69 West of the 6th Principal Meridian, County of Boulder, State of Colorado, being described as follows:

Commencing at the West one-quarter corner of Section 13, whence the Northwest corner of said Section 13 bears North 00 degrees 05'53" East 2650.48 feet; thence along the West line of the Northwest Quarter of Section 13 North 00 degrees 05'53' East 662.62 feet to the Southwest Corner of the North half of the South half of the Northwest Quarter of Section 13; thence leaving said West line North 88 degrees 43'42" East 30.74 feet to a point on the East right-of-way line of North 119th Street and a Point of Beginning;

Thence along said East right-of-way line North 00 degrees 07'24" West 375.53 feet; thence leaving said East right-of-way line South 86 degrees 05'53" East 444.00 feet; Thence South 32 degrees 15'33" West 228.99 feet; thence South 06 degrees 09'11" West 145.75 feet to a point on the South line of the North half of the South half of the Northwest Quarter of Section 13; thence along said South line South 88 degrees 43' 42" West 304.39 feet to a point on the East right-of-way line of North 119th Street and the Point of Beginning,
County of Boulder, State of Colorado

Also Known as: 9108 North 119th Street, Longmont, CO  80501



**03177186**  10/17/2011 11:07 AM
RF: $11.00   DF: $0.00        Page: 1 of 1
Electronically recorded in Boulder County Colorado.
Recorded as received.

Recording Requested By:
Bank of America
Prepared By: Cecilia Rodriguez
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
9108 N 119th St
Longmont, CO 80501-8943

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          LIBERTY HOME LOANS, INC.
Borrower(s):              JAMES N. BURRUS AND TERESE L. BURRUS
Date of Deed of Trust:    6/30/2005
Original Loan Amount:     $359,650.00

Recorded in Boulder County, CO on: 7/11/2005, book N/A, page N/A and instrument number 2703319
IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
_10-7-11_

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Kathy Oriard Assistant Secretary
_____

State of California
County of Ventura

On _OCT 0 7 2011_ before me, **Tina Mazahri**_____, Notary Public, personally appeared _____Kathy Oriard_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____        (Seal)
My Commission Expires: _____

TINA MAZAHRI
Commission # 1908072
Notary Public - California
Los Angeles County
My Comm. Expires Oct 22, 2014

03256935
Page: 1 of 1
DF: $0.00

Boulder County Clerk, CO

Recording requested by:
Security Connections, Inc.
240 Technology Dr.
Idaho Falls, ID 83401

When recorded mail to:
Security Connections, Inc.
240 Technology Dr.
Idaho Falls, ID 83401

CORPORATION ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and transfers to:
HOMEWARD RESIDENTIAL, INC., FKA AMERICAN HOME MORTGAGE SERVICING, INC.
1525 S BELTLINE ROAD, COPPELL, TX 75019-4913

All beneficial interest under that certain Deed of Trust dated 6/30/05, executed by: JAMES N BURRUS and TERESE L BURRUS, Trustor as per TRUST DEED recorded as Instrument No. 2703319 MZ on 7-11-05 MZ in Book MZ Page MZ of official records in the County Recorder's Office of BOULDER County, COLORADO.

BOULDER COUNTY TREASURER
Original Mortgage $359,650.00
9108 N 119TH ST, LONGMONT, CO 80501

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: 06/06/2012        BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

By
PABLA ZUNIGA, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 06/06/2012 before me, TAKAYUKI R. UTO , Notary Public, personally appeared PABLA ZUNIGA, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
TAKAYUKI R. UTO

TAKAYUKI E. UTO
Commission # 1842250
Notary Public - California
Los Angeles County
My Comm. Expires Mar 27, 2013

Prepared by: PABLA ZUNIGA
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0632

**03348208**   10/16/2013 03:17 PM
RF: $16.00       DF: $0.00          Page: 1 of 2
Electronically recorded in Boulder County Colorado.
Recorded as received.

Loan No.        874 / Terese L. Burrus and James N. Burrus

## ASSIGNMENT OF DEED OF TRUST

For valuable consideration received, Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc., its successors and/or assigns, transfers to Ocwen Loan Servicing, LLC, its successors and assigns forever, all right, title and interest under that Deed of Trust dated June 30, 2005, recorded in Boulder County, Colorado, on July 11, 2005 at Reception No. 2703319, encumbering real property therein described as:

The legal description of the Property is set forth in the Deed of Trust, a copy of which is attached hereto, and such description is incorporated and made a part hereof by reference

Also known as: 9108 NORTH 119TH STREET, LONGMONT, CO 80501

Witness my hand and seal this __6th__ day of _____September_____, 20__13__.

By: Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc.

Signed: _Ann-Marie A. Owens_
Name:        Ann-Marie A. Owens
Title:          Authorized Officer

STATE OF __Pennsylvania__ )

COUNTY OF __Montgomery__ )

On __Sept. 6__ 20_13_ before me, __Mary Jo McDermott__, personally appeared ____Ann-Marie A. Owens____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Pennsylvania__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public __Mary Jo McDermott__

__10·21·15__
My Commission Expires

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY JO McDERMOTT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 21, 2015

Prepared by Aronowitz & Mecklenburg, LLP
1199 Bannock Street
Denver, CO 80204-3628

## ATTACHED LEGAL DESCRIPTION

A tract of land situated in the North half of the South half of the Northwest Quarter of Section 13, Township 2, North, Range 69 West of the 5th Principal Meridian, County of Boulder, State of Colorado, being described as follows:

Commencing at the West one-quarter corner of Section 13, whence the Northwest corner of said Section 13 bears North 00 degrees 05'53" East 2650.48 feet; thence along the West line of the Northwest Quarter of Section 13 North 00 degrees 05'53" East 662.62 feet to the Southwest Corner of the North half of the South half of the Northwest Quarter of Section 13; thence leaving said West line North 88 degrees 43'42" East 30.74 feet to a point on the East right-of-way line of North 119th Street and a Point of Beginning;

Thence along said East right-of-way line North 00 degrees 07'24" West 375.53 feet; thence leaving said East right-of-way line South 86 degrees 05'53" East 444.00 feet; Thence South 32 degrees 15'33" West 228.99 feet; thence South 06 degrees 09'11" West 145.75 feet to a point on the South line of the North half of the South half of the Northwest Quarter of Section 13; thence along said South line South 88 degrees 43'42" West 304.39 feet to a point on the East right-of-way line of North 119th Street and the Point of Beginning,
County of Boulder, State of Colorado

Also Known as: 9108 North 119th Street, Longmont, CO 80501

03721557    07/01/2019 02:08 PM
RF: $18.00    DF: $0.00    Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, OCWEN LOAN SERVICING, LLC, whose address is 1661 WORTHINGTON RD., SUITE 100, WEST PALM BEACH, FL 33409, (ASSIGNOR), does hereby grant, assign and transfer to FEDERAL NATIONAL MORTGAGE ASSOCIATION, whose address is 13150 WORLDGATE DRIVE, HERNDON, VA 20170, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 6/30/2005
Original Loan Amount: $359,650.00
Executed by (Borrower(s)): JAMES N. BURRUS & TERESE L. BURRUS
Original Trustee: PUBLIC TRUSTEE OF BOULDER
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LIBERTY HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: 2703319 in the Recording District of BOULDER, CO, Recorded on 7/11/2005.

Property more commonly described as: 9108 NORTH 119TH STREET, LONGMONT, COLORADO 80501

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ____APR 1 9 2019____

OCWEN LOAN SERVICING, LLC

By: Tim Rosa
Title: Senior Servicing Operations Specialist

Witness Name: Lakevia S Thompson

Boulder County, CO

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of      **PALM BEACH**

On __APR 1 9 2019__, before me, __Ryan F. Rifflard__, a Notary Public, personally appeared **Tim Rosa, Senior Servicing Operations Specialist of/for OCWEN LOAN SERVICING, LLC,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **Florida** that the foregoing paragraph is true and correct.  I further certify __Tim Rosa__, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): __Ryan F. Rifflard__
My commission expires: __11/30/2021__

Notary Public State of Florida
Ryan F Rifflard
My Commission GG 164353
Expires 11/30/2021

03721558        07/01/2019 02:08 PM
RF: $18.00      DF: $0.00      Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **13150 WORLDGATE DRIVE, HERNDON, VA 20170**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 6/30/2005.
Original Loan Amount: $359,650.00
Executed by (Borrower(s)): **JAMES N. BURRUS & TERESE L. BURRUS**
Original Trustee: **PUBLIC TRUSTEE OF BOULDER**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LIBERTY HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2703319 in the Recording District of **BOULDER, CO**, Recorded on 7/11/2005.

Property more commonly described as: **9108 NORTH 119TH STREET, LONGMONT, COLORADO 80501**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 6/7/2019

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: MARK WATERMAN
Title: VICE PRESIDENT

Witness Name: PHIMAQ KRESHPANJI

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **FLORIDA**
County of   **PINELLAS**

On 6/7/2019, before me, **VERONIQUE J. SIMS**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify MARK WATERMAN, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): VERONIQUE J. SIMS
My commission expires: 1/21/2022

VERONIQUE J SIMS
Commission # GG 177066
Expires January 21, 2022
Bonded Thru Budget Notary Services

03721559         07/01/2019 02:08 PM
RF: $18.00      DF: $0.00         Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF BUNGALOW SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 6/30/2005
Original Loan Amount: $359,650.00
Executed by (Borrower(s)): **JAMES N. BURRUS & TERESE L. BURRUS**
Original Trustee: **PUBLIC TRUSTEE OF BOULDER**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LIBERTY HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2703319 in the Recording District of **BOULDER, CO**, Recorded on **7/11/2005**.

Property more commonly described as: **9108 NORTH 119TH STREET, LONGMONT, COLORADO 80501**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **6/21/2019**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF BUNGALOW SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: MATTHEW KRUEGER
Title: **VICE PRESIDENT**

Witness Name: **CATHERINE LATELLA**

Boulder County, CO

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of       **PINELLAS**

On 6/21/2019, before me, GERALD E. MURCH, a Notary Public, personally appeared **MATTHEW KRUEGER, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF BUNGALOW SERIES III TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(signature)_

(Notary Name): **GERALD E. MURCH**
My commission expires: 2/13/2022

GERALD E MURCH
Commission # GG 171364
Expires February 13, 2022
Bonded Thru Budget Notary Services

RECORDING REQUESTED BY:
Servis One, Inc. dba BSI Financial Services
Attn: BSI Collateral Team
314 S. Franklin Street-2nd floor
Titusville, PA 16354

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### LIMITED POWER OF ATTORNEY

**Cabana Series III Trust ("Trust")**, by and through **U.S. Bank Trust National Association, a**
national banking association organized and existing under the laws of the United States and having
an office at 190 S. La Salle Street, MK-IL-SL7R, Chicago, IL 60603, not in its individual
capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Servis One, Inc. dba
BSI Financial Services ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through
any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing
or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the
tasks described in the items (1) through (12) below; provided however, that (a) the documents
described below may only be executed and delivered by such Attorneys-In-Fact if such documents
are required or permitted under the terms of the Trust Agreement dated as of October 29, 2018,
between PRP III Holdings, LP, as Depositor and Administrator, and U.S. Bank Trust National
Association, as Trustee, for Cabana Series III Trust, (b) all actions taken by Servicer pursuant to this
Limited Power of Attorney must be in accordance with Federal, State and local laws and
procedures, as applicable and (c) no power is granted hereunder to take any action that would be
either adverse to the interests of or be in the name of U.S. Bank National Association in its
individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's
responsibilities to service certain mortgage loans (the "Loans") held by
U.S. Bank Trust National Association, as Trustee for the above referenced Trust. These Loans are
comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security
instruments (collectively the "Security Instruments") encumbering any and all real and personal
property delineated therein (the "Property") and the Notes secured thereby.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account
    and interest (which now is, or hereafter shall become due and payable) belonging to or
    claimed by the Trustee, and to use or take any lawful means for recovery by legal process or
    otherwise, including but not limited to the substitution of trustee serving under a Deed of
    Trust, the preparation and issuance of statements of breach, notices of default, and/or notices
    of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state
    or local laws) foreclosing on the properties under the Security Instruments by judicial or non-
    judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of
    receiver, suits for waste, fraud and any and all other tort, contractual or verifications in

support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3. Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers ("Borrowers") and/or the Property ("Property") associated with each of the Loans, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, lien releases and other documents necessary to effectuate the short sale of a property secured by a Mortgage or Deed of Trust, a deed in lieu of foreclosure or related documents to facilitate the acceptance of a deed in lieu of foreclosure, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6. Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7. Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8. Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial re-conveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a

foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Execute and deliver Limited Powers of Attorney in order to further delegate the authority granted under this Limited Power of Attorney for the purpose of effectuating Servicer's duties and responsibilities under the related trust agreements.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Delaware Trustee", "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants Servicer the full power and authority to correct minor ambiguities and errors in documents necessary to effect items (1) through (12) above.

In addition to the indemnification provisions set forth in the applicable servicing agreement for the Trust, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee.

Witness my hand and seal this 4th day of December, 2018.

**NO CORPORATE SEAL**

Cabana Series III Trust by
U.S. Bank Trust National Association,
as Trustee

Witness: Mary Ann Turbak

By: _____
Jose A. Galarza, Vice President

Witness: Edward W. Przybycien Jr.

By: _____
April E. Lancsak, Vice President

Attest: Matthew M. Smith, Vice President

Document drafted by U.S. Bank Trust
National Association, as Trustee

## CORPORATE ACKNOWLEDGMENT

State of Illinois

County of Cook

On this 4th day of December, 2018, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Jose A. Galarza, April E. Lancsak and Matthew M. Smith personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President, and Vice President, respectively of U.S. Bank Trust National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
            Vicky Eaton

OFFICIAL SEAL
VICKY EATON
Notary Public - State of Illinois
My Commission Expires Apr 17, 2019

My commission expires: 4/17/2019

After Recording Return To:
BSI Financial Services
Attn: Recording Department
1425 Greenway Drive, Suite 400
Irving, Texas 75038

_____[Space Above This Line For Recording Data]_____

Loan No.: ███████

Investor Loan No.: ███████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this  14th  day of  November, 2018
between  James N Burrus and Terese L Burrus

("Borrower/Grantor")
and U.S. Bank Trust National Association, as Trustee of Bungalow Series III Trust by its attorney-in-fact, BSI
Financial Services, whose address is 1425 Greenway Drive, Suite 400, Irving, Texas 75038

("Lender/Grantee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"). dated
June 30th, 2005        , recorded July 11th, 2005        , and recorded in Book/Liber N/A        , Page N/A        ,
Instrument No. 2703319        , of the        Records of Boulder        County, Colorado
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
9108 North 119th Street, Longmont, Colorado 80501

Loan No.: ████████

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of July 1st, 2018            , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 325,436.25            , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of   4.000  %, from June 1st, 2018            . Borrower promises to make monthly payments of principal and interest of U.S. $ 1,360.12        , beginning on the  1st   day of  July        ,  2018       , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of  4.000       % will remain in effect until principal and interest are paid in full. If on  June 1st, 2058           , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

---

Loan No.: ████████

     (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

     5.    Borrower understands and agrees that:

     (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

     (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

     (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

     (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

     (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

     (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

     Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

     By checking this box, Borrower also consents to being contacted by text messaging☐.

     (g)    Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

     Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

     If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii)Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the

Loan No.: ███████

tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property. and then to the sums secure by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

6.      If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.      Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Loan No. ████████

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | |
|---|---|
| _28 November 2018_ | _James N Burrus_ (Seal) |
| Date | James N Burrus —Borrower |
| _____ | _____ (Seal) |
| Date | Terese L Burrus —Borrower |
| _____ | _____ (Seal) |
| Date | —Borrower |
| _____ | _____ (Seal) |
| Date | —Borrower |

## BORROWER ACKNOWLEDGMENT

State of     Colorado          §
                              §
County of  Boulder            §

On this _28_ day of _November 2018_, before me, _Viola B. Nathan_ [name of notary], a Notary Public in and for said state, personally appeared   James N Burrus and Terese L Burrus

[name of person acknowledged], known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

> VIOLA B. NATHAN
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID # 19994010285
> MY COMMISSION EXPIRES JULY 28, 2019

> VIOLA B. NATHAN
> NOTARY PUBLIC
> STATE OF COLORADO
> # 19994010285
> MY COMMISSION EXPIRES JULY 28, 2019

_Viola B Nathan_
Notary Signature
_Viola B. Nathan_
Type or Print Name of Notary

Notary Public, State of _Colorado_

My Commission Expires: _28 July 2019_


BSI Financial
Services

| Payment Changes | | | | |
|---|---|---|---|---|
| Date | P&I | Escrow | Total | Notice Filed |
| 7/1/2018 | $1,360.12 | $458.82 | $1,818.94 | Per Loan Mod |
| 1/1/2019 | $1,360.12 | $501.23 | $1,861.35 | Per System |
| 8/1/2019 | $1,360.12 | $520.33 | $1,880.45 | NOPC |
| 8/1/2020 | $1,360.12 | $586.55 | $1,946.67 | NOPC |
| | | | $0.00 | |
| | | | $0.00 | |

| Loan Information | |
|---|---|
| Loan # | |
| Borrower | Burrus |
| BK Case # | 12-34352 |
| Date Filed | 11/30/2012 |
| First Post Petition | |
| Due Date | |
| POC Covers | Loan Mod entered 7/1/18 |

| Date | Amount Rcvd | Post Pet Due Date | Contractual Due Date | Amt Due | Over/Short | Suspense Credit | Suspense Debit | Suspense Balance | POC Arrears Credit | POC Debit | POC Suspense Balance | POC Paid to Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/17/2018 | $3,800.00 | 7/1/2018 | 7/1/2018 | $1,818.94 | $1,981.06 | $1,981.06 | | $1,981.06 | | | $0.00 | $0.00 | |
| 7/17/2018 | | 8/1/2018 | 8/1/2018 | $1,818.94 | -$1,818.94 | | $1,818.94 | $162.12 | | | $0.00 | $0.00 | |
| 8/6/2018 | $1,900.00 | 9/1/2018 | 9/1/2018 | $1,818.94 | $81.06 | $81.06 | | $243.18 | | | $0.00 | $0.00 | |
| 8/31/2018 | $1,900.00 | 10/1/2018 | 10/1/2018 | $1,818.94 | $81.06 | $81.06 | | $324.24 | | | $0.00 | $0.00 | |
| 10/15/2018 | $1,900.00 | 11/1/2018 | 11/1/2018 | $1,818.94 | $81.06 | $81.06 | | $405.30 | | | $0.00 | $0.00 | |
| 2/4/2019 | $3,800.00 | 12/1/2018 | 12/1/2018 | $1,818.94 | $1,981.06 | $1,981.06 | | $2,386.36 | | | $0.00 | $0.00 | |
| 2/4/2019 | | 1/1/2019 | 1/1/2019 | $1,861.35 | -$1,861.35 | | $1,861.35 | $525.01 | | | $0.00 | $0.00 | |
| 4/1/2019 | $2,000.00 | 2/1/2019 | 2/1/2019 | $1,861.35 | $138.65 | $138.65 | | $663.66 | | | $0.00 | $0.00 | |
| 4/15/2019 | $1,500.00 | 3/1/2019 | 3/1/2019 | $1,861.35 | -$361.35 | | $361.35 | $302.31 | | | $0.00 | $0.00 | |
| 5/3/2019 | $1,500.00 | | | $1,500.00 | $1,500.00 | $1,500.00 | | $1,802.31 | | | $0.00 | $0.00 | |
| 5/29/2019 | $1,121.62 | 4/1/2019 | 4/1/2019 | $1,861.35 | -$739.73 | | $739.73 | $1,062.58 | | | $0.00 | $0.00 | |
| 6/12/2019 | $1,100.00 | 5/1/2019 | 5/1/2019 | $1,861.35 | -$761.35 | | $761.35 | $301.23 | | | $0.00 | $0.00 | |
| 6/18/2019 | $1,500.00 | 6/1/2019 | 6/1/2019 | $1,861.35 | -$361.35 | | $361.35 | -$60.12 | | | $0.00 | $0.00 | |
| 7/30/2019 | $2,282.82 | 7/1/2019 | 7/1/2019 | $1,861.35 | $421.47 | $421.47 | | $361.35 | | | $0.00 | $0.00 | |
| 8/19/2019 | $5,700.00 | 8/1/2019 | 8/1/2019 | $1,880.45 | $3,819.55 | $3,819.55 | | $4,180.90 | | | $0.00 | $0.00 | |
| 8/19/2019 | | 9/1/2019 | 9/1/2019 | $1,880.45 | -$1,880.45 | | $1,880.45 | $2,300.45 | | | $0.00 | $0.00 | |
| 8/19/2019 | | 10/1/2019 | 10/1/2019 | $1,880.45 | -$1,880.45 | | $1,880.45 | $420.00 | | | $0.00 | $0.00 | |
| 9/13/2019 | $1,900.00 | 11/1/2019 | 11/1/2019 | $1,880.45 | $19.55 | $19.55 | | $439.55 | | | $0.00 | $0.00 | |
| 10/15/2019 | $1,900.00 | 12/1/2019 | 12/1/2019 | $1,880.45 | $19.55 | $19.55 | | $459.10 | | | $0.00 | $0.00 | |
| 11/25/2019 | $1,900.00 | 1/1/2020 | 1/1/2020 | $1,880.45 | $19.55 | $19.55 | | $478.65 | | | $0.00 | $0.00 | |
| 12/23/2019 | $1,900.00 | 2/1/2020 | 2/1/2020 | $1,880.45 | $19.55 | $19.55 | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |
| | | | | | $0.00 | | | $498.20 | | | $0.00 | $0.00 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    Case No. 12-34352-EEB
                                          Chapter 13

James N. Burrus

Debtor(s).

US Bank Trust National Association as Trustee of Cabana Series III Trust

Movant.

vs.

James N. Burrus and Adam M. Goodman, Chapter 13 Trustee

Respondents.

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 28, 2020, copies of the Motion for Relief from Stay, Notice of Motion for Relief from Stay and Opportunity for Hearing and Proposed Order were electronically served via the Court's CM/ECF electronic service system pursuant to L.B.R. 9036-1(a) on the following:

Lance J. Goff
Attorney for Debtor(s)
*Via CM/ECF*

Adam M. Goodman
Chapter 13 Trustee
*Via CM/ECF*

U.S. Trustee
*Via CM/ECF*

The undersigned certifies that on August 28, 2020, a copy of the Motion for Relief from Stay, Notice of Motion for Relief from Stay and Opportunity for Hearing and Proposed Order were served via U.S. Mail, postage prepaid, on all parties against whom relief is sought and those otherwise entitled to service pursuant to Fed.R.Bankr.P. and these L.B.R. at the following addresses:

James N. Burrus
9108 N. 119th St.
Longmont, CO 80501

                    */s/ Michelle Sanchez*